WAYNE COUNTY v. L. C. COBB ET AL.

[FILED SEPTEMBER 21, 1892.]

County Boundaries. The boundaries of an organized county cannot be lawfully changed, so as to add to such county adjoining unorganized territory, unless a majority of the inhabitants of such territory so petition the county board of the county to which it is proposed to be added, nor unless the proposition has received the sanction of a majority of the voters of such county at an election duly called and held therein for that purpose.

ORIGINAL action.

*James Britton, W. M. Wright,* and *Brome, Andrews & Sheean,* for plaintiff.

*J. M. Curry,* and *Leese & Stewart, contra.*

NORVAL, J.

This action was brought by Wayne county against L. C. Cobb, M. C. Wheeler, and J. S. Lemmon, members of the board of county commissioners of Thurston county, and C. C. Maryott, the county treasurer of said county, praying that the defendants, and each of them, be perpetually enjoined from exercising any official functions or powers. with respect to certain territory, described in the petition, which plaintiff claims to be within the boundaries of Wayne county, and from collecting revenue from said territory and the property and inhabitants thereof, and that said territory be adjudged to be a part of the county of Wayne and not a portion of Thurston county.

After issues were formed the cause was referred, by consent of the parties, to Eugene Moore, Esq., to take the testimony and report the same with his findings of fact thereon. Subsequently the referee made the following findings:

"First—I find that the territory described in the petition of the plaintiff, alleged to be a part of Wayne county, Nebraska, was, April 17, 1854, set apart as a part of the Omaha Indian reservation, by treaty with the United States government, and that at the date at which the plaintiff claims that said territory became a part of Wayne county, the said territory was a part of the Omaha and Winnebago Indian reservation.

"Second—I find that at the time said territory is alleged to have been attached to and became a part of the plaintiff, Wayne county, it was occupied by the Omaha and Winnebago Indians in common as their reservation.

"Third—I find that, in the years 1880 and 1881, there were about 2,500 Omaha and Winnebago Indians and about twenty-five white persons, government employes, living upon and inhabiting said Omaha and Winnebago reservation, and that a few white persons, who were herdsmen, lived upon and occupied for a time, during the years

mentioned, that portion of the said reservation described in, the plaintiff's petition, and that said parties had no rights. of residence on said territory than that they acquired by reason of being in charge of private herds of cattle.

"Fourth—I find that a majority of the inhabitants of Wayne county signed a petition asking the legislature to. attach that part of the reservation described in the plaintiff's petition to Wayne county.

"Fifth—I find that no petition from the legal voters of Wayne county has ever been presented to the county commissioners of said county, nor has there ever been any election held or vote taken in said county to attach said. territory in dispute to said Wayne county.

"Sixth—I find that, from 1881 to 1889, Wayne county has assumed jurisdiction over the territory described in the plaintiff's petition, and levied and collected the taxes and built bridges and improved the public roads within said territory.

"Seventh—I find that, since the organization of Thurston county, said Thurston county has exercised exclusive jurisdiction over the territory in dispute and has levied and collected the taxes, improved the roads, and built and repaired the bridges.

"Eighth—I find that Pender, the county seat of Thurston county, has a population of about 800 people; that it has a number of store buildings, churches, and business. blocks, ranging in value from $1,000 to $15,000 each.

"Ninth—I find that the bonded indebtedness of Thurston county, of all sorts, is about four thousand dollars, and that the floating indebtedness of said county is about six or seven thousand dollars.

"Tenth—I find that Thurston county, as now . existing, contains four hundred and sixteen square miles and no. more, and that a severance of the land in dispute from said county will leave Thurston county but three hundred and sixty square miles.

"Eleventh—I find that the Indians now living in what is now known as Thurston county have had their lands allotted to them in severalty and have severed their tribal relations and are now living thereon and claiming to be citizens of the state of Nebraska, having all the qualifications of citizens under and by virtue of the act of congress of 1887, known as the Dawes Bill, and have been living thereon and claiming to be such citizens ever since July 1, 1887.

"Twelfth—I find that the inhabitants and voters of Wayne county did not consent that the territory in dispute should be stricken from said Wayne county at any time or in any manner.

"Thirteenth—I find that the people and taxpayers living upon the disputed territory described in plaintiff's petition prefer that said territory shall be and remain a part of Thurston county.

"Fourteenth—I find that the county of Wayne is, and for twenty years last past has been, a county duly organized under and by virtue of the laws of Nebraska.

"Fifteenth—I find that the county of Thurston claims to be a duly organized county under the laws of Nebraska, and that the defendants Cobb, Wheeler, and Lemmon claim to be the lawful county commissioners, and the defendant Maryott claims to be the lawful county treasurer of said county, and all of said defendants exercised the authority and functions of their respective offices.

"Sixteenth—I find that no petition was ever signed, nor has any election ever been held, or vote taken by the inhabitants, if any, residing on the territory mentioned in the petition and in controversy herein, nor by the inhabitants residing on any part of the Omaha and Winnebago Indian reservations, to attach any of said territory to Wayne county, nor has the consent of any of the inhabitants of any of said territory or reservation ever been obtained to attach said territory to Wayne county."

The legislature of 1881 sought to change the boundaries of Wayne county by adding to said county a strip of territory four miles wide by fourteen miles long, adjoining on the east of said county, which was a part of the Omaha and Winnebago reservation. Subsequently, in 1889, the legislature created and established Thurston county, including within its boundaries the aforesaid strip of land, containing fifty-six sections. The main question presented is the validity of the legislative enactment extending the boundaries of Wayne county. If valid, the territory in dispute is still a part of said county, and the act of 1889, which detached said territory therefrom and made the same a part of the county of Thurston, would contravene sections 2 and 3, article X, of the state constitution, because the people of Wayne county, neither by vote nor petition, asked to have said territory stricken from said county.

It is urged that the act of 1881, extending the boundaries of Wayne county, is illegal for two reasons: First, because the added territory was at the time a portion of an Indian reservation, the occupants of which had not then severed their tribal relations; therefore the legislature had no authority to attach the same to an organized county without the consent of congress; second, because the question of attaching said territory to Wayne county was never submitted to a vote of the people thereof.

In our view it will only be necessary to consider and pass upon the second or last ground of objection.

Section 3, article X, of the constitution declares that " There shall be no territory stricken from any organized county unless a majority of the voters living in such territory shall petition for such division, and no territory shall be added to any organized county without the consent of the majority of the voters of the county to which it is proposed to be added," etc. The quoted constitutional provision restricts the power of the legislature to change the boundaries of any organized county. After a county has been formed or established it is not within the author-

ity or jurisdiction of the law-making body to change the
boundaries thereof by either striking a portion therefrom,
or by adding territory thereto, unless a majority of the
qualified electors of the county consent to such change. It
appears from the findings of the referee that no election
was ever held or vote taken in Wayne county upon the
proposition to annex thereto the territory in dispute. While
it is true the majority of the inhabitants of said county
petitioned the legislature to attach the territory, such act
was not a compliance with the requirements of the statute
then in force relative to the adding of unorganized territory
to an organized county.

Section 9, article I, chapter 18, Compiled Statutes 1881,
provides that "Where any unorganized territory, not
exceeding two townships, lies adjoining to and is not em-
braced within the boundaries of any county, and a majority of
the inhabitants of said territory petition to the commission-
ers of said adjoining county to be attached to the same, the
county board of said county shall, within three months,
order an election as provided for in sections 4, 5, and 6 of
this act, and said territory shall become attached to said
county by a majority vote of the same, and be subject in
all other respects to the provisions of this act."

While the constitution requires that the proposition to
change the boundaries of an organized county so as to in-
clude therein unorganized territory must receive the sanc-
tion of a majority of votes of the county, the legislature
has by the above provision pointed out the mode of pro-
cedure. It prescribes that the manner of taking the ex-
pression of the people upon the proposition shall be by
ballot at an election called for that purpose by the county
board of the county. No such an election having ever been
called or held in Wayne county, the territory in question
was never legally a part of said county. It follows that
the action must be

DISMISSED.

THE other judges concur.